# Exhibit

# A

_____ x
SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF QUEENS

KATHY MEDRANO

        Plaintiff

- against -

                                           Index No.

                                           Date Index No.
                                           Purchased:

CITY OF NEW YORK, CITY UNIVERSITY OF
NEW YORK, LAGUARDIA COMMUNITY COLLEGE,
KENNETH ADAMS, CHANDANA MAHADESWARASWAMY,     **<u>SUMMONS</u>**
CATHERINE BONET AND DARREN THOMAS

        Defendants
_____ x

To the Person(s) Named as Defendant, Above:

     PLEASE TAKE NOTICE THAT YOU ARE HEREBY SUMMONED to answer the complaint of the plaintiff(s) herein and to serve a copy of your answer on the plaintiff at the address indicated below within 20 days after the service of this Summons (not counting the day of service itself), or within 30 days after service is complete if the Summons is not delivered personally to you within the State of New York.

     YOU ARE HEREBY NOTIFIED THAT should you fail to answer, a judgment will be entered against you by default for the relief demanded in the complaint.

DATED:      Syosset, New York
            April 28, 2021

                                 THE LAW OFFICE OF SUZANNE MYRON
                                 Attorneys for Plaintiff
                                 By: */ s /* Suzanne Myron
                                 6800 Jericho Turnpike Suite 120W
                                 Syosset, New York, 11791
                                 Tel: 516-393-5821

To Defendants:      City of New York
                    c/o Corporation Counsel
                    100 Church Street 5th Floor
                    New York, New York 10007

LaGuardia Community College
Kenneth Adams
Chandana Mahadeswaraswamy
Catherine Bonet
Darren Thomas
31-10 Thomson Avenue
Long Island City, NY  11101

City University of New York
Main Administrative Office
205 East 42nd Street
New York, NY  10017

Venue:  Plaintiff designates Queens County as the place of trial. The basis of venue is place of occurrence.  Plaintiff resides at  97-47 94th Street; Apartment Basement; Ozone Park; New York; 11416-2305

_____ x
SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF QUEENS

KATHY MEDRANO

          Plaintiff


- against -                                                    Index No.

                                                          Date Index No.
                                                          Purchased:

CITY OF NEW YORK, CITY UNIVERSITY OF      **JURY TRIAL**
NEW YORK, LAGUARDIA COMMUNITY COLLEGE,     **DEMANDED**
KENNETH ADAMS, CHANDANA MAHADESWARASWAMY,
CATHERINE BONET AND DARREN THOMAS

                    Defendants                  **COMPLAINT**
_____ x

          PLAINTIFF by her attorneys, THE LAW OFFICE OF SUZANNE MYRON, complaining of

Defendants, respectfully allege upon information and belief:

1.      At all times hereinafter mentioned Plaintiff KATHY MEDRANO ("MEDRANO") was and still

is a resident of the County of Queens, State of New York.  She is an American citizen of Dominican

descent and is a single, working mother of three children.

2.      That in early September, 2019, and all times hereinafter mentioned, Defendant CITY OF NEW

YORK ("CNY") was, and still is, a municipal corporation.

3.      That in early September, 2019, and all times hereinafter mentioned, Defendant CITY

UNIVERSITY OF NEW YORK ("CUNY") was, and still is, a municipal corporation.

4.      That in early September, 2019, and at all times hereinafter mentioned, Defendant LAGUARDIA

COMMUNITY COLLEGE ("LCC") was, and still is, a municipal corporation.

5.      That in early September, 2019, and at all times hereinafter mentioned, Defendant CUNY was,

and still is, a public university system of the CNY, organized and existing under the laws of the State of

New York as per Education Law §6201 et seq.  Defendant LCC was, and still is, one of CUNY's community or "junior" colleges, which, upon information and belief, offers associates degrees and certificate programs for students who reside in Queens.

6.      That in early September, 2019, and at all times hereinafter mentioned, Defendants CHANDANA MAHADESWARASWAMY ("MAHADESWARASWAMY"), CATHERINE BONET ("BONET") AND DARREN THOMAS ("THOMAS") were employees of said municipal corporations. Defendant KENNETH ADAMS ("ADAMS") replaced former Interim President Dr. Paul Arcario as president of LCC in August of 2020.  Dr. Arcario, who is still employed by LCC, was interim president of LCC from August 2019 to August 2020.

7.      That previously on October 9, 2020, a sworn Notice of Claim stating, among other things, the times and places where the defendants engaged in breach of contract, false advertising and deceptive trade practices was filed.  The Notice of Claim was in reference to a medical billing "certificate" program which included job counseling, training and placement.  The Notice of Claim was served on the plaintiff's behalf on the CNY, LCC and CUNY.  The Notice of Claim demanded adjustment or payment thereof.  More than 30 days have elapsed since the Notice of Claim has been served, and the adjustment or payment was neglected or refused.

8.      On March 1, 2021, pursuant to General Municipal Law Section 50-h, a hearing was held on behalf of defendants, via Zoom.

9.      Upon information and belief, as president of LCC, ADAMS is responsible for overseeing and maintaining the educational standards of the entire LCC community, implementing the policies and bylaws of CUNY and LCC, and running the day to day operations of LCC, including supervision of students and employees.

10.     Upon information and belief, MAHADESWARASWAMY is the senior director of career and professional programs in the division of adult and continuing education ("ACE") division at LCC.  As

2

per one web posting, her duties include "focus(ing) on designing and implementing industry- informed

workforce development initiatives for technology and healthcare sectors."

11.     Upon information and belief, BONET is the program manager for the adult and continuing

education ("ACE") program at LCC.

12.     Upon information and belief, THOMAS is an educational case manager for the adult and

continuing education ("ACE") program at LCC.  His duties include "case management", "career

coaching" and "administrative duties" including assisting with tracking students' progress, identifying

issues affecting performance, motivating students and "promoting retention and employment

outcomes", providing crisis intervention, support, advocacy and referrals to social services, serving as a

liaison between the student and outside agencies and college services, working on employment

readiness skills including a career path, providing critical feedback to students from employer partners

and helping match students to specific roles in the employer organizations.  THOMAS has a master's

degree in mental health counseling and has held multiple jobs.

13.     The Supreme Court is a court of general jurisdiction and retains jurisdiction of all matters

relating to CUNY's community colleges/junior colleges, including LCC, as per New York State

Education Law §6224.

14.     Defendant LCC's principal place of business is in Queens County, New York.  The contract,

mentioned hereafter, was signed at LCC and its subject matter concerns LCC.  The informational

sessions and interviews as well as most of the classes for the program were held at LCC.  In addition,

plaintiff lives and works in Queens County, New York.

15.     On March 20, 2020, as per Executive Order (EO) 202.8 Governor Andrew Cuomo tolled all

statutes of limitation in the State of New York until April 19, 2020 as part of the state's ongoing

measures to deal with COVID-19.  With the continuances of this tolling provision as per EO 202.14

(extending the toll until May 7, 2020), EO 202.28 (through June 6, 2020), EO 202.38 (through July 6,

3

2020) , EO 202.48 (through August 5, 2020), EO 202.55 (through September 4, 2020), EO 202.60

(through October 4, 2020), and EO 202.67  (through November 3, 2020), this action to recover

damages for the above-listed breach of contract and consumer law violations is brought well within the

one-year statute of limitations.

### FACTS

16.     LCC's mission, as stated on their website, is to "educate and graduate one of the more diverse

student populations in the country to become critical thinkers and socially responsible citizens who

help shape a rapidly evolving society."  It is a fair assumption that "one of the more diverse student

populations in the country" refers to Queens County residents.

17.     In the fall of 2018, MEDRANO, an American citizen of Dominican descent with a B.A. in

Business Administration, was on worker's compensation for a knee injury she sustained at her

customer service job for Spectrum.  This job was no longer available to her due to the length of time

she was out of work. She told the judge assigned to her worker's compensation case that she planned

on attending school for nursing prerequisites full time in the spring.  The judge approved this plan.

18.     In spring of 2019, MEDRANO attended Queensborough Community College ("QCC"), in order

to complete the necessary prerequisites for a career in the medical or nursing field.  She took four

classes, receiving an A- in two of them.

19.     Although MEDRANO had re-registered with QCC for the fall semester of 2019, she had

"maxxed out" all of her federal loans and thus was unable to continue.  While she could have taken

private loans, these would have required repayment during the time she attended school.  It would have

been very difficult to find a new job, work and repay private loans while she attended school full time

and took care of her three children.  She decided to try and find another way to continue her studies in

the medical field.

4

20.     In early September, 2019, MEDRANO filled out an online form indicating interest in attending a certificate program in medical billing at LCC. MEDRANO had found the program by searching the web for certificate programs in the medical field. She noted the advertisements, which enthused that you could, "Earn $40,000 as an Account Specialist: FREE Medical Billing Training at LaGuardia Community College. Six Month Certificate Program. Top Employer Partner. College Credit Available. Scholarship Based Program. For details, visit laguardia.edu/medicalbilling. Enroll Now! Program Sponsored by Grant Funding" beside a picture of a happy, professionally dressed light-skinned woman sitting in front of a computer screen.  (Please see EXHIBIT A.)

21.     MEDRANO was thereafter contacted by LCC and invited to an information session, to be held on September 17, 2019 which she attended.  A few days later, she was given information on where and when to appear for testing and interviews with staff.  She went for the testing and spoke to the people running the program, including THOMAS, the "case manager" for the program. She told them she continued to be enrolled at QCC but needed the medical billing job so that she could work while going to school part time for a higher level position in the medical field.  She told them that she was now attending a pre-nursing program during the day, and of the fact she had three children.  She hoped that, as an employee of one of the big hospitals, she would obtain reimbursement for tuition expenses as she worked towards a higher level degree in nursing or the medical field--a common perk for large hospital employees.

22.     On October 2, 2019, she attended an interviewing event jointly sponsored by Mt. Sinai Health Systems ("Mt. Sinai") and LCC.  MEDRANO did notice that THOMAS, a mental health professional, fawned over other potential classmates, even giving one individual the interview questions before the interviews took place--a courtesy he did not extend to her. A panel of Mt. Sinai staffers asked her about her interest in medical billing.   Kathy did very well at the event and learned from Daniel Lino

5

("Lino"), the medical billing program's "instructional associate", that she was selected to attend the probationary portion of the program. Lino told her that she was one of top ranked candidates.

23.     On October 4, 2019, MEDRANO signed a contract called "Medical Billing Specialist Candidate Agreement" ("Agreement") which committed her to attending the program, including a probationary period of five weeks. The Agreement specified that she was required to attend classes regularly and promptly, respond to any staff emails within one business day, work well in teams, be professional in manner, and complete work on time. Failure to do so, the Agreement went on to say, would cause termination from the program. She understood, as the Agreement indicated, that the medical billing program was an entry level employment program, set up in order to help people like her, an unemployed resident of the borough of Queens, enter into the fast-growing medical field. The Agreement stated that she was additionally subject to general rules that LCC requires of all students, including those found within its code of conduct. (Please see EXHIBIT B.)

24.     Attached to the Agreement was a document called "Medical Billing Specialist Program Training Probationary Period", which stated that after the probationary period there was a "full medical billing specialist training". The document was clear that it did not guarantee a job but it also made it clear that they would help her find one, including setting up an interview with one or more of their hospital partners, as well as "ultimate assistance with job placement". It outlined the dates for the classes from probation through the end of the entire training program. (Please see EXHIBIT C.)

25.     Both the probationary period document and the Agreement itself state that the program would run through April 23, 2020, and that classes would be given during the evening. This was a good fit for MEDRANO as she still had her day classes at QCC to attend in the fall, and would be able to fit the LCC classes in during the evening. MEDRANO hoped to be employed by May of 2020, and to continue her studies part time at QCC by the following fall of 2020. She was then approved for an $8,125 scholarship which, it was inferred, would be paid directly from an unknown source to LCC.

6

26.      MEDRANO continued to attend classes at QCC and began probationary period classes for

medical billing at LCC on October 10, 2019.   She completed courses in business communication, the

United States healthcare system, Microsoft Excel, and another entitled "Career/Job Readiness".

THOMAS attended every class.  She noticed that there were approximately 28 people attending the

probationary period classes.  She also noticed that many students were foreign born and did not speak

English well.  **Finally, none of the students were given textbooks but had to print all materials**

**themselves, at their own expense.**

27.      In November of 2019, she received an email with a letter attached from Lino saying she had

received an 80 in Introduction to US Healthcare, an 82 in Introduction to Excel, a 90 in Career/Job

Readiness, and an 85 in Introduction to Business Communication.  The letter stated that she was

"conditionally accepted" into the "full training", but that she needed to make an appointment with

THOMAS, during which time an "action plan" needed to be discussed and implemented.   (Please see

EXHIBIT D.)

28.      To her knowledge, no one else in the class had received such a plan, even though she was one of

only a few college graduates in the class.

29.      MEDRANO sought out THOMAS, who told her that she needed to "focus" and that he had had

to "fight for her to be in the program".  MEDRANO was confused:  THOMAS had previously told the

class that they needed to maintain an 80 or above to continue with the program and she had done that.

No written "action plan" was mentioned and afterwards it seemed the whole thing was forgotten.

However, MEDRANO knew THOMAS understood her to be committed to both the QCC and LCC

programs and worried that he thought she could not handle both programs, since he told her the LCC

program was "intense".   On Tuesdays, she had to cut short her afternoon QCC psychology class, for

which she paid full tuition with her federal loans, in order to get to the LCC program on time due to the

fact they were in opposite ends of the borough.

7

30.     THOMAS, whose role was turning out to be more that of disciplinarian and less a source of support for students, had a way of making her feel that she was not going to be able to continue in the program if she didn't prioritize LCC over everything else.  For instance, he often told her she "looked tired" and pulled her out of class to criticize her for minor issues such as having her "phone out", i.e. sitting on her desk on vibrate instead of put away, even though other students in the class, who were also parents, had theirs out as well.  No professor at QCC ever did anything similar, and MEDRANO felt singled out, demeaned and harassed.  THOMAS even said that he was afraid that she would give up the medical billing class at LCC because of the QCC classes, which MEDRANO had no intention of doing, and told him so.  Even so, MEDRANO utilized an in-home tutor and studied hard at home.

31.     MEDRANO began the full training on November 11, 2019.  At this point, the program eliminated seven people, the majority of which were dark-skinned Black individuals.  MEDRANO told THOMAS she felt this was wrong, which he dismissed.  She also noticed that the vast majority of students remaining were foreign-born students from Asia who could barely speak English.  She realized that the program deliberately sought out foreign-born students from certain countries at the expense of those born in the United States.

32.     The "full training" consisted of courses including: U.S. Healthcare System Healthcare Accounting and Review Cycle, Healthcare Data Analysis, Medical Billing, Introduction to Business Communication, Insurance Verification, and Job Search/Job Readiness.  By December of 2019, based on THOMAS' continuing comments, and being exhausted and ill with the flu from commuting daily from QCC to LCC, the extra classes, having to do homework as well as take care of her children, she decided to discontinue her studies at QCC altogether so that she would be able to put all of her efforts into the medical billing program at LCC.

8

33.     In December of 2019, MEDRANO got an 80 grade on an exam.  Actually, she had gotten a 100 grade, but twenty points were taken off for incorrect formatting.  Other students' grades were much higher, even though they had said they didn't think they had done well.

34.     In January of 2020, MEDRANO received a text from THOMAS telling her she'd done a great job asking questions at the scheduled Weill Cornell Medicine ("Weill Cornell") job shadowing event.  He also made it clear that she was selected because "they" knew she had the ability to perform in the program, unlike the other students who were eliminated.

35.     Days later, however, THOMAS told her that he had heard she was disruptive at the event.  In spite of KATHY's entreaties, he never told her who had relayed this information to him.

36.     On March 6, 2020, MEDRANO went to a job coaching event at Weill Cornell, where she received very good marks on her interview skills from three different staffers.

37.     The pandemic hit soon thereafter, at which time classes were suspended.  THOMAS told the class that they would now have to meet virtually.  On March 12, 2020, THOMAS sent an email saying he was trying to ensure that they would "finish and have a job by the end of the program", even though the COVID epidemic would "delay job starts by a few weeks".  Shortly afterwards, MEDRANO sent her résumé to Jessica Scott ("Scott"), the professor in charge of résumé and job search classes, for revision.  On March 26, 2020, THOMAS indicated that he and Scott would be talking to Mt. Sinai and Weill Cornell about jobs.

38.     In early April 2020, MEDRANO began communicating with two of her classmates, Aileen Ortiz and Yu Chen, about a scheduled group project for Professor Khaled Kadry's ("Kadry") Healthcare Accounting and Revenue Cycle class.

39.     On April 9, 2020, MEDRANO received an email from THOMAS in which he said, "Dear Students, As per the Senior Director of Career and Professional Programs, students agree to abide by all program policies and regulations, as stipulated in the candidate agreement.  These responsibilities

9

include but are not limited to attendance to all courses and completing designated assignments.  Failure

to attend all classes in a timely fashion, and to turn in all your assignments by Monday April 13, will

result in not being selected to attend interviews with our employers. We will follow up this written

notice with a conference call to address any further issues or concerns.  Thank you in advance for your

cooperation in this matter."

40.     MEDRANO wrote back to THOMAS saying that she had done all of these things, and she

wasn't sure if this email was meant just for her or for everyone.  Later she realized that some people

from the class did not get this email.

41.     On April 10, 2020, after THOMAS responded that Scott had not yet received MEDRANO's

résumé, MEDRANO sent another copy to Scott.

42.     Later that same day, she received another email from THOMAS addressed to the entire class

which changed the graduation date from April 23 to April 30, 2020 and stated "once the organizations

(start hiring) again, demand for billers will be high".  Further, he stated that he would be available to do

mock interviews, provide updates and "talk about anything else until job placement begins", stating "I

want you to be ready for those jobs as soon as the economy perks up … and I think it's owed to you for

being so patient".

43.     On April 17, 2020, MEDRANO's grandmother, with whom she was close, died unexpectedly

from COVID-19.   Panicking, and even though she was still in shock, she contacted professor Kadry

about submission of the group project that was due soon.  He told her via text that he was sorry for her

loss and told her that "you don't have to submit your assignments".  (Please see EXHIBIT E.)

44.     She also told several of her fellow classmates.  One of those who was part of her group project,

Yu Chen, responded that she understood she had a lot going on and to do her best. Ultimately, they

allowed her to complete the conclusion of the project as her contribution, which she did.  In addition,

10

despite the difficulty of the situation, MEDRANO continued to attend online classes without fail, only keeping the camera off the week of the 16th, because she was grieving.

45.     THOMAS continued to show favoritism towards certain students. MEDRANO noticed that other students had been given preference in mock interviews by setting theirs up first, and she had to call for hers.   In addition, another classmate's dog had died and she was allowed to miss class time without being singled out for it.

46.     On April 28, 2020, Professor Kadry emailed MEDRANO to ask her to forward two assignments so he could "finalize all grades".   MEDRANO was not sure which assignments he was referring to, so she called him.  He told her that the assignments were the written work for the group project and the other was the presentation for the group project.  The latter she had already submitted and the former was the written part of the assignment, both of which Kadry had told her she did not need to do.

47.     Later that day, she received an email from the general "medical billing" inbox, which was occasionally used by THOMAS to communicate with the class.  In the email, whose subject was entitled "Warning Letter", it stated that she had been accused of five violations of the Agreement "since October", none of which she had ever received written notice of prior to this date.  The charges included:

1)     "Questionable" behavior during a final exam in January 2020;

2)     "Disruptive" behavior at a job shadowing event in January 2020 at Weill Cornell;

3)     "April 17-23 (2020) student lack of participation in class or not turning on computer as requested";

4)     Failure to contribute to the group project "prior to family emergency" in April of 2020; and

5)     that Professor Khaled Kadry reported that she had failed to turn in two main assignments for the Revenue and Billing Cycle class on time, which "proof" was the April 28 email from Kadry asking for the two assignments, and was attached to the email.

11

48.     The email went on to state that she would be allowed to graduate from the program, but she would not be allowed to participate in job placement, including the interview process, counseling, and possible placement with one of their employer partners.  These allegations were not backed by any specifics as to witnesses who may have complained, except for Kadry.  Further, no appeal or hearing rights were given.  The email merely stated that she could respond, if she wished, with "questions or concerns" to the general medical billing inbox.  However, no deadline was given to appeal nor was she invited to interview any of the witnesses or present evidence on her own behalf.  This, in spite of the fact that LCC's student code of conduct, to which the original Agreement refers, indicates that students at the school have due process rights, including rights to a hearing before a committee of students, the right to present her own witnesses and an appeal.  Finally, no one identified themselves as the sender of the email.

49.     At this point, MEDRANO responded to the email and stated she had fulfilled all requirements, even coming to class when sick, and she did not understand why they would bring any of this up now long after these events had allegedly occurred, and in addition that the allegations were not true.  More specifically, she always attended the online classes and had only had the screen off the week her grandmother died, due to the fact she was grieving.  Given the fact she was ill on the day job shadowing took place she did not understand what the email meant about acting inappropriately since she had a migraine and even though she was ill, still participated to the same extent as everyone else.  She stated that the charges about not turning in her assignments on time were untrue, and had proof of that, and that she had done what she was asked and that was to do the conclusion on the group project and had proof of that.  (Please see EXHIBIT F.)

50.     On April 29, 2020, MEDRANO attempted to contact THOMAS and his assistant, Trisha Francis, on social media.  She realized that both of them had blocked her, so she sent an email to THOMAS asking him to refer her to someone else if he could not help her.   He never responded.

12

51.     MEDRANO attended graduation, which was held online on April 30, 2020.  What, at first blush, looked like a certificate was emailed to her.  It stated: "Certificate of Completion Awarded to Kathy Medrano for successfully completing Medical Billing Specialist Program (286 hours)" below which, it stated, in fine print, "**This achievement recognizes your skills and tenacity to move into the next phase of your training.  You are now one step closer to becoming a Medical Billing Specialist within the Medical Field.  We wish you success!**" The certificate is signed by "Catherine Bonet, Program Manager" and "Chandana Mahadeswaraswamy, Senior Director" and is dated April 30, 2020.  It should be noted that Kathy never met BONET, but MAHADESWARASWAMY had been present at a previous event.  She was unaware, however, of MAHADESWARASWAMY's real title. (Please see EXHIBIT G.)

52.     Later that same day, she learned from one professor, Michael Gera, that she received an A in his class, Healthcare Data Analysis.  She previously learned she had also received an A in Medical Billing from professor Bindu Pallai and an A- in Revenue Cycle and Accounting from professor Kadry.

53.     Soon afterwards, MEDRANO heard that other people in the program were getting interviews and jobs with hospital partners and were in communication with THOMAS and others from the program.  She was not included in these communications.

54.     On May 6, 2020 and without explanation, she received an email from "medical billing" with what was purported to be her résumé attached.  The résumé was reformatted and some of the fonts were shrunken, including that of the words "Bachelor's in Business Administration", giving it an unprofessional and disorganized appearance and making it harder to find on the résumé.  The individual who sent the email was not identified.

55.     Soon after, MEDRANO learned that a one-year temporary job as a contact tracer was being offered to the group as a stopgap until Mt. Sinai and Weill Cornell started hiring again, and so she

13

applied and got the job. This temporary job, through a staffing agency, has no benefits and no opportunities for advancement.

56.     Beginning in early June 2020, MEDRANO was contacted by an individual who claimed to be from Workforce1 Development at NYC.gov but whose email showed them to be from an independent company.  She was contacted multiple times by this same individual, who, without introducing themselves, repetitively asked whether she wanted a job in medical billing. This person is not listed anywhere on NYC.gov's website.  MEDRANO has never been instructed that she would be contacted by any agency/company and is not sure where they got her email information or whether it is legitimate.

57.     On June 9, 2020, MEDRANO wrote to the medical billing inbox again and asked why she had not received any response to her questions and concerns about the "Warning Letter".  She stated that she had had no problem getting a response a few days before regarding a grading matter and was confused as to why they had not responded to her.

58.     On June 10, 2020, MEDRANO finally received an email response from the medical billing inbox in regards to her 4-28-20 reply to the "Warning Letter". The unsigned email stated that they "had witnesses",  including "students and staff" to the fact she had acted inappropriately at the job shadowing event in January and wanted "time stamped proof" of the fact she had contributed to the group project "before the 16th (of April)" and "time stamped proof" that Kadry had instructed her not to submit her assignment.  For some reason, the email response did not mention the other two charges again.  This time, the email indicated it was from "the management team".  Indeed, its tone and language were not like previous emails from that email address.  (Please see EXHIBIT H.)

59.     On June 11, 2020,  THOMAS sent an email to the rest of the class about an open position as a medical clerk in a doctor's office in Morris Heights.  Even though THOMAS' position is that of a counselor, liaison, service provider and mental health professional and he had promised to help

14

everyone in the class with placement "after graduation and beyond", MEDRANO was not included in this email.

60.    THOMAS continues to send regular emails with jobs out to other students, and he continues to exclude MEDRANO from the emails.

61.    Further, although paper copies of the "Certificate of Completion" for the medical billing course were made, MEDRANO never received one.

62.    MEDRANO is unable to go back to taking prerequisite courses without financial help.  She has been foreclosed from applying for clerk positions within the large hospitals or elsewhere as they only take people with several years of medical billing experience or those whom the program recommends and/or refers and she no longer has the backing of the institution.  Although she contacted professors and asked them whether they would be willing to give her a reference, the only professor who responded was Kadry, who agreed to do so.  Further, although she has called CUNY in regards to finding out about a phlebotomy program at QCC, and although she already attended QCC previously, no one from QCC will return her phone calls.  MEDRANO is aware that many of her classmates have found jobs, even though many are non-native English speakers, likely with the help of the program.  Many are at large hospitals.

63.    The medical billing program is a failure.  Like others in the low-income area LCC purports to service, MEDRANO was used by an institution to get a grant while she was defrauded of her dream of becoming a nurse.  The scholarship she received was slated to be used to help underserved people climb out of poverty, as is the purported goal of LCC and which is based on the philosophy of Fiorello LaGuardia, the beloved former mayor of New York City, the founder of the college, himself.  Yet, LCC, THOMAS, BONET and MAHADESWARASWAMY breached the Agreement for "full training" in medical billing and job placement, including assistance before and after graduation.  They falsely advertised that they would be able to help her get a $40,000 a year job after graduation and deceived

15

her as to the value and legitimacy of the training course, for which they received her scholarship money and she received nothing but a worthless piece of paper. Finally, MEDRANO reasonably relied upon their assurances of full training and placement and, because of that as well as the pressure and harassment by THOMAS to drop her nursing prerequisites at QCC, she gave up her pursuit of a higher level medical field degree at QCC.

FIRST CAUSE OF ACTION
BREACH OF CONTRACT

64.     Plaintiff repeats and reiterates each and every allegation contained in paragraphs numbered "1" through "63" above as set forth fully herein.

65.     Plaintiff and LCC made an agreement on October 4, 2019, which was duly signed by plaintiff on such day, based upon the advertisement plaintiff viewed prior to signing up for the program, the Agreement itself and the Medical Billing Specialist Probationary Period document which was handed out to the candidates.  (Please see EXHIBIT A, EXHIBIT B AND EXHIBIT C respectively.)

66.     Plaintiff fully performed her part of the contract, e.g. in spite of extreme odds continued to both attend and excel at the program, resulting in her graduating from the program having earned mostly As and Bs in her classes.   Her attendance, performance and attitude were outstanding at all times, even when she herself became ill and later when her grandmother passed away.

67.     Defendants breached the agreement by inventing false charges regarding plaintiff which they used to terminate her from the program and ensure she was never counseled, interviewed or placed into any medical billing job anywhere either before or after graduation and would not be admitted as a student to any CUNY schools thereafter.

68.     Defendants' breach caused extensive damage to plaintiff.  Without assistance, recommendations and an introduction from the program staff, plaintiff is unable to obtain entry level opportunities in

16

medical billing as most area jobs require three, four or more years of experience and are located at large hospitals, which also have promotional and transfer opportunities as well as benefits, in addition to the stated starting salaries. She also lost out on the opportunity to pursue a degree in nursing part-time while working as a biller in said hospital, including attending school in the evenings and eventually utilizing employee benefits to do so. She lost out on the opportunity to continue her studies in nursing when THOMAS harassed her into dropping her studies at QCC. Further, to take part in the program, plaintiff had to print her own materials, commute to and from LCC across town in her car, cut short some of her classes at QCC, as well as pay for parking. She lost future opportunities to attend QCC, and apparently other CUNY schools, as a phlebotomist or otherwise.

69.     By reason of the foregoing, the Agreement was breached by defendants. Said breach of defendant's responsibilities after plaintiff more than fulfilled her responsibilities under the contract caused plaintiff damage in the form of impaired earning capacity amongst other damage. She seeks judgment against the Defendants in a sum of money which exceeds the jurisdictional limits of all the Courts of lesser jurisdiction. These economic damages include any and all types of damage which flow from Defendants' conduct, including but not limited to, actual, prospective, compensatory, consequential and expectation damages and incidental damages.

SECOND CAUSE OF ACTION<br>
VIOLATIONS OF GBL §349 and  NYC Admin. Code §20-700- DECEPTIVE TRADE PRACTICES

70.     Plaintiff repeats and reiterates each and every allegation contained in paragraphs numbered "1" through "69" above as set forth fully herein.

71.     Plaintiff signed up for the Medical Billing Specialist Certificate Program due to an advertisement which held out specific promises that Defendants targeted to those, like plaintiff, who were low income, minority, needed work quickly, and whose ambition was to get into a job at one of the large hospital "employer partners".

17

72.     Defendants held out the promise of job placement in a $40,000-a-year job at a large health care corporation, *as well as* training and career counseling before, during *and* after the class began.  Yet as soon as the class began, there were issues with some students, mainly those who were dark-skinned black individuals, being let go from the program during the initial five-week period, and others who were lighter skinned being favored for no reason, even though they had not met requirements.  After she complained, MEDRANO, who is also dark-skinned, was harassed over petty issues.  By late spring/early April, after most of the class had been completed, MEDRANO was not being given the same opportunities as other students who still attended the program, and which continued after graduation.

73.     Many of the students have been placed in jobs apparently due to the fact they were light skinned, did not speak English well, and did not complain about the program's practices.  It is obvious that in spite of being advertised as such, the full terms of the program are not available to just "anyone" in the Queens community, which, upon information and belief, is 75% minority and constitutes the majority type of "consumer" to whom the course is advertised..

74.     Plaintiff has suffered actual non-economic harm in that she has incurred anguish, anxiety, fear, humiliation, damage to her reputation and damage to her standing within CUNY and the community due to the harassment, termination from the program and the fact that she was never provided with the services she was promised. As her temporary one-year job as a contract tracer with an independent employment agency comes to a close, she will have to hope the contract is renewed for another year, even though COVID-19 cases are down statewide.

75.     The above is a violation of GBL §349 in regards to deceptive trade practices and consumer fraud and NYC Admin. Code §20-700 in regards to unfair trade practices. As an alternative to the above-listed actual damages, plaintiff seeks a $50 penalty as per the general business law and $500 as per the NYC Admin. Code.  In addition, plaintiff seeks attorney's fees under GBL §349(h).

18

THIRD CAUSE OF ACTION
VIOLATIONS OF GBL §350 Et. Seq.and NYC Admin. Code §5-09– FALSE ADVERTISING

76.     Plaintiff repeats and reiterates each and every allegation contained in paragraphs numbered "1" through "75" above as set forth fully herein.

77.     In addition to the allegations set forth above in paragraphs 69-74, plaintiff suffered damages, and continues to suffer damages, having witnessed the program remove dark-skinned black individuals from the Queens community like herself and report this as an issue to THOMAS only to be told five months later that she was also terminated.  She realizes now that the program was aimed at light skinned individuals which is why very few dark skinned women are pictured in any of the advertisements for the program, however, this was not immediately apparent since the program continued to be advertised to the minority Queens community at large.

78.     Without the recommendations, training and job placement, the certificate, which indicates that MEDRANO will need further training, in spite of promises that it prepared her for the medical billing profession, is a useless piece of paper, and cannot even be used at LCC as the parties have parted ways, and it cannot be transferred for credit towards other billing programs at different schools as it is not an accredited program and does not enable MEDRANO to take any certifying exams.

79.      Plaintiff has suffered actual non-economic harm in that she has incurred anguish, anxiety, fear, humiliation, damage to her reputation and damage to her standing within the school and community due to the harassment by THOMAS during the program, the termination from the program and the fact that she was never provided with the services she was promised.

19

80. The above is a violation of GBL §350 et seq in regards to consumer false advertising. As an alternative to actual damages, plaintiff seeks a penalty in the amount of $500 under the general business laws and $500 under the NYC Admin. Code. In addition, plaintiff seeks attorney's fees available under GBL §350-e.

FOURTH CAUSE OF ACTION
VIOLATIONS OF TITLE VI OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C. §2000d and
SECTION 1983

81. Plaintiff repeats and reiterates each and every allegation contained in paragraphs numbered "1" through "80" above as set forth fully herein.

82. As per 42 U.S.C. §1983, defendants acted under color of state law when they deprived plaintiff of her rights and privileges which were secured by the Constitution and federal laws, i.e. Title VI of the Civil Rights Act of 1964, which prohibits race, color and national origin discrimination under any program or activity that receives federal financial assistance, See 42 U.S.C. §2000d. LCC is a public entity receiving federal financial assistance and would fall under this statute.

83. Plaintiff was retaliated against after reporting the dismissal of seven dark skinned persons from program during a probationary period where a stated grade point average of 80 needed to be achieved in order to move into the second phase of the program. Regardless of the grade point average achieved, these people were dismissed from the program and others, who did not meet the criteria, remained.

84. Plaintiff objected to this dismissal by complaining to THOMAS, who, upon information and belief, did not follow it up or make a formal complaint himself, nor did he otherwise address it, other than to harass plaintiff about petty issues like having her phone on vibrate instead of off during class, talking to others on occasion during class, and by pulling her out of class to talk to her about her "attitude". This led MEDRANO to drop her QCC pre-nursing classes in order to put her full effort into the medical billing program. Even after this was done, she was allowed to stay until April 30,

20

graduation day, but did not receive help for the last part of the training, resume preparation, job interviews, counseling and placement, including recommendations.

85.    Indeed, upon information and belief, the vast majority of dark skinned, American-born, individuals did not receive recommendations, counseling or job placement from the program.

86.    The above occurrences constitute violations of 42 U.S.C. 1983 and Title VI of the Civil Rights Act of 1964, which prohibits discrimination on the basis of race, color or national origin.  This conduct has caused damage to plaintiff.  By reason of the foregoing, plaintiff seeks judgment against the Defendants in a sum of money which exceeds the jurisdictional limits of all the Courts of lesser jurisdiction and in a sum to be determined at trial.

21

WHEREFORE, the plaintiff prays that judgment on all causes of action be entered in her favor as follows:

a.      That plaintiff be awarded economic, actual, prospective, compensatory, consequential and expectation damages and incidental damages, including pre-judgment and post-judgment interest; in a sum exceeding the jurisdictional limits of all Courts of lesser jurisdiction, in an amount to be determined at trial;

b.      attorney's fees for the violations of the general business laws;

c.      costs and disbursements of this action; and

d.      for such other, further and different relief as the court deems just and proper.


Dated: April 28, 2021
       Syosset, New York

                              THE LAW OFFICE OF SUZANNE MYRON


                              */s/ Suzanne Myron*
                              _____
                              Suzanne Myron
                              6800 Jericho Turnpike Suite 120W
                              Syosset, New York 11791
                              516-393-5821
                              smyron@specialeducationlawyerny.com

                              *Attorneys for Plaintiff,*
                              *KATHY MEDRANO*

22

# EXHIBIT A





Certified N

INFORM
S E S S

Thursday, Augus
6:00 pm A05PA

• Learn about the
  Certified Medical
  medical administ

• A healthcare prof
  Certified Medical
  Program can help

• Find out the skills
  front-end and bac
  roles

To register or for
call (718) 482-724
http://www.laguar



## Earn $40,000 as an Account Specialist

### FREE Medical Billing Training at LaGuardia

• Six-month certificate program
• Top employer partner
• College credit available
• Scholarship based program

For details, visit
laguardia.edu/medicalbilling



**Enroll Now!**
Program sponsored by grant funding.

Phone; (718) 482-7244 • E-Mail: acereg@l

# EXHIBIT B

## Medical Billing Specialist Candidate Agreement

As a candidate in the Medical Billing Specialist Program, I understand that the goal of this program is to assist with employment. I agree to the following responsibilities and will comply with the following:

- I understand that attending the training probationary period does not guarantee me a spot in the full course. However, if I am invited to participate in the full training (November 11, 2019 – April 23, 2020) I have reviewed the schedule and am able to attend the schedule sessions, **including the events at Weill Cornell Medicine and Mount Sinai.**
- I understand I must meet all course content, attendance, teamwork/participation, and professionalism/communication expectations listed below to maintain my enrollment in the program. I may be terminated from the program for not demonstrating satisfactory performance in any one of the four areas.

   1) Course Content
      - I will complete and submit all class assignments as requested by their respective due dates.
      - If I have to miss a class due to an emergency, I will make-up all missed material in a timely manner.
      - I understand all material taught in the course is related to my ultimate employment. I will work with instructors and tutors to ensure mastery of the course material. If I received an unsatisfactory grade, I will continue to work on the assignment until I can satisfactorily demonstrate mastery of material.

   2) Attendance
      - I understand that I am required to arrive on time and attend all scheduled sessions outlined in this agreement. If I am more than 10 min late, I will be marked late; more than 30 min late, I will be marked absent for the session. Three lateness' will count as 1 absence.
      - Classes are for registered students only. I understand that I am not permitted to bring children or any other visitors to class.
      - I understand I may also be required to schedule individual appointments with the employment specialist and educational case manager to successfully complete the program and to assist in my job search.
      - I understand that absences, other than in the event of an emergency or illness, are not acceptable. If my absences or lateness for any class exceeds twenty percent (20%) of scheduled class time, I understand that I will be terminated from the program.

   3) Teamwork/ Participation
      - I understand that group work is a critical component of learning and is required by all students. Effectively working in different teams is a key skill employers are seeking and is as important as individual achievement in training.
      - I understand that telephones and all other devices must be turned off during class time.
      - I will participate fully in activities during training to support the learning process.
      - I will abide by LAGCC's Code of Conduct in its entirety. I will refrain from engaging in behavior that adversely affects the integrity of any class or the program.

   4) Professionalism/Communication
      - I will respond to all email and phone requests from program staff within 1 business day.
      - I will communicate all emergency absences or lateness to both the educational case manager and instructor prior to class. I will communicate directly with staff regarding individual appointments.
      - If I have a compliment or complaints, I will speak with the instructor and the educational case manager.

## Medical Billing Specialist Candidate Agreement (cont.)

- I understand that the Medical Billing Specialist Program is aimed at providing better employment opportunities to students. Therefore, following the program, I will cooperate with LAGCC and its designees, as may be requested from time to time, in providing information about my current and future employment status which may include paystub, pay rate, job title and/or employer name.
- By signing this agreement, I give permission for staff to contact my place of employment for verification purposes.
- <u>I understand that the program does not guarantee placement in a job</u>. I understand that the program will assist me with my job search and make recommendations for appropriate entry level positions, based on staff and faculty assessment of my performance in the program. I understand that in order to secure a higher level position in the future, I must show initiative and motivation; that any promotion depends on the employer's evaluation of my performance; and that neither LaGuardia Community College nor the program staff has any influence on promotion, pay increase or termination once I am employed.

As a candidate in the Medical Billing Specialist Program, I agree to abide by all of the responsibilities and regulations above. Failure to do so may, without limitation, lead to my removal from the program. These rules and regulations are in addition to, and not in lieu of, any other LAGCC or program policies, rules and regulations that may be in effect from time to time.

**My signature on this form acknowledges that I have received and have agreed to the rules and regulations set forth above.**

NAME (please print): Kathy medrano

SIGNATURE: _____ DATE 10/4/19

We may use pictures taken in class or at graduation to promote the Medical Billing Specialist program online, in the catalog, or by flyer in the future. Please sign the following model release allowing LaGuardia to use pictures that you may be part of to promote the course.

### LaGuardia Community College
### LaGuardia Community College Foundation
### City University of New York
### Model Release

I hereby grant LaGuardia Community College ("the College"), LaGuardia Community College Foundation ("the Foundation"), Harvard Business School Club of New York (HBSCNY) and the City University of New York ("CUNY") and their respective subsidiaries, affiliates, successors and assigns, and to other such persons or corporations as the College, the Foundation, HBSCNY and CUNY may designate from time to time, the absolute right and permission to use my name, portrait, picture (by video or film photography or still photography and with or without soundtrack), likeness in whole or in part and comments ascribed to me, in whole or in part, with or without written copy for advertising, marketing, art, publicity, editorial, promotion and fundraising purposes in College, Foundation, HBSCNY or CUNY literature and other magazines, newspapers and media for any lawful purpose whatsoever.

I waive all my rights to inspect and approve the finished product; its use or such copy as may be used in connection herewith.

I hereby release, discharge, and agree to hold harmless the College, the Foundation, HBSCNY and CUNY and their respective subsidiaries, affiliates, successors and assigns, and to other such persons or corporations acting in conjunction with the College, the Foundation, HBSCNY and CUNY, from any liability whatsoever arising from the use of my name, portrait, picture (by video or film photography or still photography and with or without soundtrack), likeness in whole or in part and comments ascribed to me, in whole or in part, blurred, distorted or altered in any way, whether intentional or otherwise, that may occur in the completion of the finished product.

I hereby warrant that I am eighteen years of age or older and have the right to contract in my name with respect to the matters stated above.

I have read the above permission and release, prior to its execution, and I am fully familiar with the contents thereof.

Signed _____ Date **10/4/19**

Print Name: Kathy medrano

Contact Info: Telephone: 347-865-9011

Email: Kmedrano09@gmail.com

Witnessed by: _____

# EXHIBIT C



### Medical Billing Specialist Program

### Training Probationary Period

**Training Probationary Period Description:**

The Medical Billing Specialist program is an employment program designed to assist adults in gaining employment in the high-demand field of healthcare finance. During the training probationary period our team of instructors will provide an overview of the Healthcare System, Professional Development, and Excel training. This will provide the mandatory foundation for the full medical billing specialist training which runs November 11th, 2019 thru April 23rd, 2020 and ultimate assistance with job placement. The Friday review sessions are available for students who need extra help but are not mandatory.

**Training Probationary Period Schedule (13 session)**

| Session 1 | 6 -9pm | Thursday, 10/10/19 | | Session 8 | 6 -9pm | Thursday, 10/24/19 |
|---|---|---|---|---|---|---|
| Session 2 | 6 -9pm | Tuesday, 10/15/19 | | Study Lab | 1 -5pm | Friday, 10/25/19 |
| Session 3 | 6 -9pm | Wednesday, 10/16/19 | | Session 9 | 6 -9pm | Monday, 10/28/19 |
| Session 4 | 6 -9pm | Thursday, 10/17/19 | | Session 10 | 6 -9pm | Tuesday, 10/29/19 |
| Study Lab | 1 -5pm | Friday, 10/18/19 | | Session 11 | 6 -9pm | Wednesday, 10/30/19 |
| Session 5 | 6 -9pm | Monday, 10/21/19 | | Session 12 | 6 -9pm | Thursday, 10/31/19 |
| Session 6 | 6 -9pm | Tuesday, 10/22/19 | | Study Lab | 6 -9pm | Friday, 11/01/19 |
| Session 7 | 6 -9pm | Wednesday, 10/23/19 | | Session 13 | 6 -9pm | Monday, 11/04/19 |

**Training Probationary Period Assessment**

In the program students will be assessed on four key employment criteria: mastery of course content, attendance, teamwork/participation, and professionalism/communication in each course. Successful completion of the training probationary period is defined as satisfactory performance in all four areas (see medical billing specialist candidate agreement for details). Students will be notified if they have been awarded the $8,125 scholarship for the full tuition of the program by Friday, 10/04/2019.

**Training Program**
**Program Dates:** begins Monday, November 11, 2019 – Thursday, April 23, 2020.

**Program Schedule:** Monday, Tuesday, Wednesday, Thursday 6:00-9:00pm,
                     & Optional Friday Study Lab 1:00-5:00pm

**No Class:** November 28th, 2019, December 23rd – January 1st, 2020, January 20th, 2020, February 12th & 17th, 2020

**Weill Cornell Medicine & Mount Sinai Events – Mandatory (Dates Tentative):**
- Friday, December 13th, 2019 1-5pm – Job Shadowing @ Mount Sinai
- Friday, January 17th, 2020 1-5pm – Job Shadowing @ Weill Cornell Medicine
- Friday, February 14th, 2020 1-5pm – Epic Training @ Weill Cornell Medicine
- Friday, March 6th, 2020 1-5pm – Coaching Event @ Weill Cornell Medicine
- Friday, March 20th, 2020 1-5pm – Coaching Event @ Mount Sinai
- Friday, April 10th, 2020 1-5pm – Interviews @ Weill Cornell Medicine
- Friday, April 17th, 2020 1-5pm- Interviews @ Mount Sinai

# EXHIBIT D



11/07/2019

Kathy Medrano

97-47 94th Street

Ozone Park, New York 11416

United States

Dear Kathy,

I am pleased to offer you a spot in the full training of the Medical Billing Specialist Certificate Program at LaGuardia Community College.

Continuing as a candidate in the Medical Billing Specialist Program, you are agreeing to abide by all of the responsibilities and regulations detailed in the "**Medical Billing Specialist Candidate Agreement**" signed at the beginning of the training probationary period. Failure to do so may, without limitation, lead to my removal from the program. **As a reminder**:

- Students understand that they will be assessed throughout the program in the following four categories: **Mastery of Course Content**, **Attendance**, **Teamwork/Participation**, **and Professionalism/Communication**.

- Students understand the Medical Billing Specialist Program is aimed at providing better employment opportunities to students. Therefore, following the program, students will cooperate with LAGCC and its designees, as may be requested from time to time, in providing information about current and future employment statuses which may include paystub, pay rate, job title and/or employer name.

- Students understand that the program does not guarantee placement in a job. Students understand that the program will assist with job search and make recommendations for appropriate entry level positions, based on staff and faculty assessment of each student's performance in the program. Students understand that in order to secure a higher level position in the future, they must show initiative and motivation; that any promotion depends on the employer's evaluation of their performance; and that neither LaGuardia Community College nor the program staff has any influence on promotion, pay increase or termination once they are employed.



Your training continues on **11/11/2019** at **6 PM**... *Are you ready to begin?*

**This is a conditional acceptance to the program provided you meet certain conditions and requirements that will be discussed with an Action Plan. I would like for you to make an appointment with Darren Thomas, Educational Case Manager, so the requirements can be discussed, formulated and agreed upon. Once those conditions are met, you will transition to be fully accepted.**

If you accept, please email your confirmation to me and CC: Darren by **3 PM** on **11/11/2019**, to receive a room assignment.

Please see your Probationary Period grades below:

| Module | Mastery of Content | |
|---|---|---|
| Intro to Business Comm. | 85 | B |
| Career/Job Readiness | 90% | A- |
| Intro to The U.S. Healthcare System | 80 | B- |
| Intro to Excel | 82% | B- |

Congratulations, Kathy. We look forward to your participation in our program.

Sincerely,

Daniel Lino
Instructional Associate
LaGuardia Community College
31-10 Thomson Ave, M-141
Long Island City, NY 11101
718-730-7480
dlino@lagcc.cuny.edu



# EXHIBIT E



INDEX NO. 709760/2021
RECEIVED NYSCEF: 04/28/2021

# EXHIBIT F

# My reply back after I receive the warning email on April 28

Received: Tuesday, May 5, 2020 3:33 AM

From: Kathy kmedrano09@gmail.com

To: myronlaw@protonmail.com

Good Evening,
I Just received this warning stating that I didn't comply with program rules. I feel that the reason for me not to receive a job with partner for this warning it don't make sense. I pass all my exam and I got good feed back on Weil Cornell as well.

I needed this opportunity fo me to get a placement job. I been in the program for 6 months and I have comply with everything that I was ask to do. I pass all my test, I came to class everyday even being sick myself I still came to my class. I did all my assignment and I have prove for that. Is this is a reason to not help me is very wrong and I will me a complaint boy this because this is not right, All these excuse is very petty for me not to get a job when I did everything in part to success in this program. I want a follow up on this issue. The reason I did this program was to get a job to improve my life and skill.

- **January 17th**-Complaint regarding disruptive behavior during Weill Cornell Job Shadowing Event January 13th event -Ii always have summited alll I There was never evidence it was me and that day I was really sick. I ask Darren to please find out what was issue and it was me because no name was given. Im very prefessional and I was shock for this.

- **April 7th- April 25th**-Student lack of participation in class or not turning on the screen as requested I just got one one warning when my camera was off and that was the beginning when we first started the remote class after that my camera been on also when the camera was off which was the week of the 16th of April my grandma pass away and I wasn't in emotionally stable and I still attended my class with no issue or complain beside going thru the death of my grandmother.

- **April 21st**-Complaint student is not contributing to course project prior to family emergency/personal illness _ My grandmother pass away and my peer was aware of that and they allow me to do the conclusion because of my emotional well being which I did the conclusion. I have evidence to proof my this and also my conversation with peer.

- Instructor Khaled Kadry reported via e-mail (attached) that student failed to hand in main assignments for Healthcare Accounting and Revenue Cycle Management in a timely fashion - I always summited all my work to professor even my final exam the only assignment that I was advise no to summited was the final and professor advise himself not to summited and I have evidence text for that . So I don't know where is that coming from.

- .

- .

On Apr 28, 2020, at 5:36 PM, Med Billing <MedBilling@outlooklive.laguardia.edu> wrote:

As per the Medical Billing Specialist Candidate agreement signed by you on 10/4/2019 (copy attached), you agreed to "**comply with the responsibilities and regulations related to course content, attendance, teamwork/participation and professionalism/communication**", and "**Students**understand that the program will assist with job search and make recommendations for appropriate entry level positions, based on staff and faculty assessment of each student's performance in the program."

During your probationary period and throughout the program you received four verbal and written (**five with the current notice**) warnings by the Educational Case Manager and Instructors on:

- **January 8th**-Questionable conduct during Excel final exam
- **January 17th**-Complaint regarding disruptive behavior during Weill Cornell Job Shadowing Event January 13th event
- **April 7th- April 25th**-Student lack of participation in class or not turning on the screen as requested
- **April 21st**-Complaint student is not contributing to course project prior to family emergency/personal illness
- **April 28th**-Instructor Khaled Kadry reported via e-mail (**attached**) that student failed to hand in main assignments for Healthcare Accounting and Revenue Cycle Management in a timely fashion

At this time you will not be invited to be interviewed or placed with one of our employment partners. However, you will graduate from the program and receive an official signed certificate of completion. If you have any questions or concerns regarding this notice send them to medbilling@outlooklive.laguardia.eduthe Medical Billing general Inbox.

Thank you for your participation in the Medical Billing Program and we wish you all the best in your future endeavors.

<Assignment_Email_4_28.pdf><Kathy_Medrano_Candidate_Agreement.pdf>

Regards,
Kathy Medrano


Regard,
Kathy M.

INDEX NO. 709760/2021
(51) Inbox | myronlaw@protonmail.com | ProtonMail
RECEIVED NYSCEF: 04/28/2021

# Re: Warning Letter

Received: **Monday, July 20, 2020 10:48 AM**

From: **Kathy kmedrano09@gmail.com**

To: **myronlaw myronlaw@protonmail.com**

Regard,
Kathy M.

On Apr 28, 2020, at 7:50 PM, Kathy <kmedrano09@gmail.com> wrote:

Regard,
Kathy M.

Begin forwarded message:

**From:** Med Billing <MedBilling@outlooklive.laguardia.edu>
**Date:** April 28, 2020 at 5:36:42 PM EDT
**To:** Kathy <kmedrano09@gmail.com>
**Subject: Warning Letter**

As per the Medical Billing Specialist Candidate agreement signed by you on 10/4/2019 (copy attached), you agreed to **"comply with the responsibilities and regulations related to course content, attendance, teamwork/participation and professionalism/communication"**, and **"Students understand that the program will assist with job search and make recommendations for appropriate entry level positions, based on staff and faculty assessment of each student's performance in the program."**

During your probationary period and throughout the program you received four verbal and written (**five with the current notice**) warnings by the Educational Case Manager and Instructors on:

- **January 8th**-Questionable conduct during Excel final exam
- **January 17th**-Complaint regarding disruptive behavior during Weill Cornell Job Shadowing Event January 13th event
- **April 7th- April 25th**-Student lack of participation in class or not turning on the screen as requested
- **April 21st**-Complaint student is not contributing to course project prior to family emergency/personal illness
- **April 28th**-Instructor Khaled Kadry reported via e-mail (**attached**) that student failed to hand in main assignments for Healthcare Accounting and Revenue Cycle Management in a timely fashion

At this time you will not be invited to be interviewed or placed with one of our employment partners. However, you will graduate from the program and receive an official signed certificate of completion. If you have any questions or concerns regarding this notice send them to medbilling@outlooklive.laguardia.eduthe Medical Billing general inbox.

Thank you for your participation in the Medical Billing Program and we wish you all the best in your future endeavors.

<Assignment_Email_4_28.pdf>

<Kathy_Medrano_Candidate_Agreement.pdf>

# EXHIBIT G

FILED: QUEENS COUNTY CLERK 04/28/2021 12:49 PM
NYSCEF DOC. NO. 9

INDEX NO. 709760/2021
RECEIVED NYSCEF: 04/28/2021



**LIC²**
The Learning & Innovation Center
in Long Island City
LaGuardia Community College

# Certificate of Completion

## Awarded to

# Kathy Medrano

## for successfully completing

### MEDICAL BILLING SPECIALIST PROGRAM

(286 HOURS)

This achievement recognizes your skills and tenacity to move into the next phase of your training. You are now one step closer to becoming a Medical Billing Specialist within the Medical Field. We wish you success!

*Catherine Bonet*
Catherine Bonet
Program Manager

*M.Chandana*
Chandana Mahadeswaraswamy
Senior Director

April 30, 2020
Date

# EXHIBIT H

# Fwd: Warning Letter KATHY MEDR4ANO

Received: **Wednesday, June 10, 2020 8:40 PM**

From: **Kathy kmedrano09@gmail.com**

To: **myronlaw myronlaw@protonmail.com**

Regard,
Kathy M.

Begin forwarded message:

> From: Med Billing <MedBilling@outlooklive.laguardia.edu>
> Date: June 10, 2020 at 8:00:59 PM EDT
> To: kathy medrano <kmedrano09@gmail.com>
> Subject: Re: Warning Letter KATHY MEDR4ANO

Good Afternoon Ms. Medrano,

Hope all is well. This correspondence is from the management team of the Medical Billing Specialist program.

On April 28th you were sent a warning letter due to four instances of program noncompliance with supportive documentation from your instructor. These instances weren't insignificant and were in direct violation of program standards.

As indicated in our initial correspondence we clarified that upon enrolling in the program you signed and agreed to the terms of conduct listed in the Medical Billing Specialist Candidate agreement. "Students understand that the program will assist with job search and make recommendations for appropriate entry level positions, based on staff and faculty assessment of each student's performance in the program" and "comply with the responsibilities and regulations related to course content, attendance, teamwork/participation/communication".

Please provide verification of the following:

**January 17th**-You claim you weren't disruptive during the Weil Cornell Job Shadowing event on January 13th and that you were sick

- We have a group of students and staff that witnessed your behavior
- Is there documentation on file that you were sick?

**April 21st**-Before your family emergency on the week of April 16th, there is no documentation you contributed to the course project

- **Forward a time stamped e-mail (prior to April 16th) proving your contribution to the project**

**April 28th**-You claim that instructor Khaled Kadry told you not to submit the main assignment for Healthcare Accounting and Revenue Cycle Management.

- **"I always summited all my work to professor...professor advise himself not to summited and I have evidence text for that"**

- Forward a time stamped e-mail from Khaled Kadry instructing you not to submit your assignment

Thank you in advance for your attention to this matter. We look forward to hearing from you.

Best,
Medical Billing Specialist Program

From: kathy medrano <kmedrano09@gmail.com>
Sent: Tuesday, June 9, 2020 5:43 PM
To: Med Billing <MedBilling@outlooklive.laguardia.edu>
Subject: Re: Warning Letter KATHY MEDR4ANO

II have send a reply regarding this email back on April 28, 2020 and haven't yet got a response from anyone. You guys was quick to response to an email regarding my grade couple days ago , but I haven't heard anyone regarding this particular email about warning. I need someone to response to this email or I will will escalate this matter to higher management including the director of the program or the manager. I email Darren and he block me from all communication and I was send to general inbox and no answer. The program have to answer my email. I feel my right have been taken and very unfair.

On Apr 28, 2020, at 5:36 PM, Med Billing <MedBilling@outlooklive.laguardia.edu> wrote:

As per the Medical Billing Specialist Candidate agreement signed by you on 10/4/2019 (copy attached), you agreed to **"comply with the responsibilities and regulations related to course content, attendance, teamwork/participation and professionalism/communication"**, and **"Students understand that the program will assist with job search and make recommendations for appropriate entry level positions, based on staff and faculty assessment of each student's performance in the program."**

During your probationary period and throughout the program you received four verbal and written **(five with the current notice)** warnings by the Educational Case Manager and Instructors on:

- **January 8th**-Questionable conduct during Excel final exam
- **January 17th**-Complaint regarding disruptive behavior during Weill Cornell Job Shadowing Event January 13th event
- **April 7th- April 25th**-Student lack of participation in class or not turning on the screen as requested
- **April 21st**-Complaint student is not contributing to course project prior to family emergency/personal illness
- **April 28th**-Instructor Khaled Kadry reported via e-mail **(attached)** that student failed to hand in main assignments for Healthcare Accounting and Revenue Cycle Management in a timely fashion

At this time you will not be invited to be interviewed or placed with one of our employment partners. However, you will graduate from the program and receive an official signed certificate of completion. If you have any questions or concerns regarding this notice send them to medbilling@outlooklive.laguardia.edu the Medical Billing general inbox.

Thank you for your participation in the Medical Billing Program and we wish you all the best in your future endeavors.

<Assignment_Email_4_28.pdf><Kathy_Medrano_Candidate_Agreement.pdf>

Regards,
Kathy Medrano

Kathy_Medrano_Candidate_Agreement.pdf
216.59 KB

_____ x

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF QUEENS

KATHY MEDRANO

        Plaintiff

- against -

        Index No. 709760/2021

        **AFFIDAVIT OF**
        **PERSONAL SERVICE**

CITY OF NEW YORK, CITY UNIVERSITY OF
NEW YORK, LAGUARDIA COMMUNITY COLLEGE,
KENNETH ADAMS, CHANDANA MAHADESWARASWAMY,
CATHERINE BONET AND DARREN THOMAS

        Defendants
_____ x

I, Patricia Irvine, being duly sworn, depose and say that on the 11th day of June, 2021 at 10:35 a.m., I served a person of suitable age and discretion by delivering and leaving a true copy of the NOTICE OF ELECTRONIC FILING, SUMMONS AND COMPLAINT WITH EXHIBITS with Sgt. Stamisha Rue, security guard/authorized, at 31-10 Thomson Avenue, Long Island City, NY 11101, the said premises being defendant Kenneth Adams's place of work within the State of New York. Deponent completed service by emailing a true copy of NOTICE OF ELECTRONIC FILING, SUMMONS AND COMPLAINT WITH EXHIBITS to Crystal Franklin, employee in the Legal Affairs Department at LaGuardia and Legal Affairs to cfranklin@lagcc.cuny.edu and legalaffairs@lagcc.cuny.edu.

Description of person served: Age: 38, Sex: F, Race/Skin Color: African-American, Height: 5'7", Weight: 200, Hair: Brown, Glasses: No.

I certify that I am over the age of 18, have no interest in the above action. Under penalties of perjury, I declare that I have read the following document and the facts stated are true.

        Patricia Irvine, process server

Subscribed and sworn to me on the 14th
day of June 2021 by the affiant who is personally
known to me

Notary Public

Suzanne Myron
Notary Public, State of New York
No. 02MY6251566
Qualified Nassau County
Commisson Expires December 12, 20 24
January 21

1 of 1

_____ X

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF QUEENS

KATHY MEDRANO

               Plaintiff

- against -

                                        Index No. 709760/2021

                                        **AFFIDAVIT OF**
                                        **PERSONAL SERVICE**

CITY OF NEW YORK, CITY UNIVERSITY OF
NEW YORK, LAGUARDIA COMMUNITY COLLEGE,
KENNETH ADAMS, CHANDANA MAHADESWARASWAMY,
CATHERINE BONET AND DARREN THOMAS

               Defendants

_____ X

I, Patricia Irvine, being duly sworn, depose and say that on the 11th day of June, 2021 at
10:35 a.m., I served a person of suitable age and discretion by delivering and leaving a true
copy of the NOTICE OF ELECTRONIC FILING, SUMMONS AND COMPLAINT WITH
EXHIBITS with Sgt. Stamisha Rue, security guard/authorized, at 31-10 Thomson Avenue,
Long Island City, NY 11101, the said premises being defendant Catherine Bonet's place of
work within the State of New York. Deponent completed service by emailing a true copy of
NOTICE OF ELECTRONIC FILING, SUMMONS AND COMPLAINT WITH EXHIBITS to
Crystal Franklin, employee in the Legal Affairs Department at LaGuardia and Legal Affairs to
cfranklin@lagcc.cuny.edu and legalaffairs@lagcc.cuny.edu.

Description of person served: Age: 38, Sex: F, Race/Skin Color: African-American, Height:
5'7", Weight: 200, Hair: Brown, Glasses: No.

I certify that I am over the age of 18, have no interest in the above action. Under penalties of
perjury, I declare that I have read the following document and the facts stated are true.

                                    Patricia Irvine, process server

Subscribed and sworn to me on the 14th
day of June 2021 by the affiant who is personally
known to me

Notary Public

Suzanne Myron
Notary Public, State of New York
No. 02MY6251566
Qualified Nassau County
Commisson Expires December 12, 20 24
January 21

1 of 1

_____ X

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF QUEENS

KATHY MEDRANO

           Plaintiff

- against -
                                     Index No. 709760/2021

                                     **AFFIDAVIT OF**
                                     **PERSONAL SERVICE**

CITY OF NEW YORK, CITY UNIVERSITY OF
NEW YORK, LAGUARDIA COMMUNITY COLLEGE,
KENNETH ADAMS, CHANDANA MAHADESWARASWAMY,
CATHERINE BONET AND DARREN THOMAS

           Defendants
_____ X

I, Patricia Irvine, being duly sworn, depose and say that on the 11th day of June, 2021 at 10:35 a.m., I served a person of suitable age and discretion by delivering and leaving a true copy of the NOTICE OF ELECTRONIC FILING, SUMMONS AND COMPLAINT WITH EXHIBITS with Sgt. Stamisha Rue, security guard/authorized, at 31-10 Thomson Avenue, Long Island City, NY 11101, the said premises being defendant LaGuardia Community College's location within the State of New York. Deponent completed service by emailing a true copy of NOTICE OF ELECTRONIC FILING, SUMMONS AND COMPLAINT WITH EXHIBITS to Crystal Franklin, employee in the Legal Affairs Department at LaGuardia and Legal Affairs to cfranklin@lagcc.cuny.edu and legalaffairs@lagcc.cuny.edu.

Description of person served: Age: 38, Sex: F, Race/Skin Color: African-American, Height: 5'7", Weight: 200, Hair: Brown, Glasses: No.

I certify that I am over the age of 18, have no interest in the above action. Under penalties of perjury, I declare that I have read the following document and the facts stated are true.

                                         Patricia Irvine, process server

Subscribed and sworn to me on the 14th
day of June 2021 by the affiant who is personally
known to me

Notary Public

Suzanne Myron
Notary Public, State of New York
No. 02MY6251566
Qualified Nassau County
Commisson Expires December 12, 2024
January 21

1 of 1

x
_____

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF QUEENS

KATHY MEDRANO

        Plaintiff

- against -

        Index No. 709760/2021

        **AFFIDAVIT OF
        PERSONAL SERVICE**

CITY OF NEW YORK, CITY UNIVERSITY OF
NEW YORK, LAGUARDIA COMMUNITY COLLEGE,
KENNETH ADAMS, CHANDANA MAHADESWARASWAMY,
CATHERINE BONET AND DARREN THOMAS

        Defendants
_____ x

I, Patricia Irvine, being duly sworn, depose and say that on the 11th day of June, 2021 at
10:35 a.m., I served a person of suitable age and discretion by delivering and leaving a true
copy of the NOTICE OF ELECTRONIC FILING, SUMMONS AND COMPLAINT WITH
EXHIBITS with Sgt. Stamisha Rue, security guard/authorized, at 31-10 Thomson Avenue,
Long Island City, NY 11101, the said premises being defendant Chandana
Mahadeswaraswamy's place of work within the State of New York. Deponent completed
service by emailing a true copy of NOTICE OF ELECTRONIC FILING, SUMMONS AND
COMPLAINT WITH EXHIBITS to Crystal Franklin, employee in the Legal Affairs Department
at LaGuardia and Legal Affairs to cfranklin@lagcc.cuny.edu and legalaffairs@lagcc.cuny.edu.

Description of person served: Age: 38, Sex: F, Race/Skin Color: African-American, Height:
5'7", Weight: 200, Hair: Brown, Glasses: No.

I certify that I am over the age of 18, have no interest in the above action. Under penalties of
perjury, I declare that I have read the following document and the facts stated are true.

        Patricia Irvine, process server

Subscribed and sworn to me on the 14th
day of June 2021 by the affiant who is personally
known to me

Notary Public

Suzanne Myron
Notary Public, State of New York
No. 02MY6251566
Qualified Nassau County
Commisson Expires December 12, 2024
January 21

1 of 1

——————————————————————— x

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF QUEENS

KATHY MEDRANO

        Plaintiff

- against -

                                Index No. 709760/2021

                                **AFFIDAVIT OF**
                                **PERSONAL SERVICE**

CITY OF NEW YORK, CITY UNIVERSITY OF
NEW YORK, LAGUARDIA COMMUNITY COLLEGE,
KENNETH ADAMS, CHANDANA MAHADESWARASWAMY,
CATHERINE BONET AND DARREN THOMAS

        Defendants
——————————————————————— x

I, Patricia Irvine, being duly sworn, depose and say that on the 11th day of June, 2021 at 10:35 a.m., I served a person of suitable age and discretion by delivering and leaving a true copy of the NOTICE OF ELECTRONIC FILING, SUMMONS AND COMPLAINT WITH EXHIBITS with Sgt. Stamisha Rue, security guard/authorized, at 31-10 Thomson Avenue, Long Island City, NY 11101, the said premises being defendant Darren Thomas's place of work within the State of New York. Deponent completed service by emailing a true copy of NOTICE OF ELECTRONIC FILING, SUMMONS AND COMPLAINT WITH EXHIBITS to Crystal Franklin, employee in the Legal Affairs Department at LaGuardia and Legal Affairs to cfranklin@lagcc.cuny.edu and legalaffairs@lagcc.cuny.edu.

Description of person served: Age: 38, Sex: F, Race/Skin Color: African-American, Height: 5'7", Weight: 200, Hair: Brown, Glasses: No.

I certify that I am over the age of 18, have no interest in the above action. Under penalties of perjury, I declare that I have read the following document and the facts stated are true.

Patricia Irvine, process server

Subscribed and sworn to me on the 14th day of June 2021 by the affiant who is personally known to me

Notary Public

Suzanne Myron
Notary Public, State of New York
No. 02MY6251566
Qualified Nassau County
Commisson Expires December 12, 20 24
January 21

1 of 1

INDEX NO. 709760/2021
RECEIVED NYSCEF: 04/28/2021

STATE OF NEW YORK COUNTY OF QUEENS
SUPREME COURT.

Index Number: 709760/2021
Date Filed: 04/28/2021

Kathy Medrano

vs

City of New York, et al

Plaintiff

Defendant

STATE OF NEW YORK, COUNTY OF NASSAU, SS.:

**AFFIDAVIT OF SERVICE**

Raed Ibrahim , being sworn deposes and states that, the Deponent is not a party herein, is over the age of 18 years and resides in the State of New York.

That on **6/10/2021**, at **11:31 AM** at **100 Church Street, New York, NY 10007**, Deponent served the within **Summons, Complaint and Exhibits, Court Notice Regarding Availability of Electronic Filing and Consent to E-Filing** ,with the index number and the filing date of the action were endorsed upon the face of the papers so served herein. On: **City of New York**, **Defendant** therein named, ( hereinafter referred to as "subject").

By delivering to and leaving with **Betty Mezyck** said individual to be **Agent For Service Of Process** who specifically stated he/she was **authorized to accept** service on behalf of the Corporation/Government Agency/Entity. A description of Betty Mezyck is as follows:

**Sex**: Female    **Color of skin**: Black    **Color of hair**: Black    **Age**: 51-65
**Height**: 5ft4in-5ft8in    **Weight**: 131-160 Lbs.    **Other** :

Sworn to before me on June 14, 2021

Patricia Rothfritz
Notary Public - State of New York
No. 01R06055503; Qualified in Nassau County
My Commission Expires February 26, 2023

Client's File No.: 2021000823

Process Server, Please Sign
Raed Ibrahim

Lic# 1326602
Job #: 2113196

*DIRECT PROCESS SERVICE: SERVICE DISTRIBUTED BY INTER COUNTY JUDICIAL SERVICES LLC,*
*6851 JERICHO TURNPIKE, SUITE 180, SYOSSET NY 11791 LICENSE # 1371771*

1 of 1

Kathy Medrano

*vs*

Plaintiff

City of New York, et al

Defendant

STATE OF NEW YORK, COUNTY OF NASSAU, SS.:

**AFFIDAVIT OF SERVICE**

Raed Ibrahim , being sworn deposes and states that, the Deponent is not a party herein, is over the age of 18 years and resides in the State of New York.

That on **6/11/2021**, at **11:44 AM** at **205 East 42nd Street , New York, NY 10017**, Deponent served the within **Summons, Complaint and Exhibits, Court Notice Regarding Availability of Electronic Filing and Consent to E-Filing** ,with the index number and the filing date of the action were endorsed upon the face of the papers so served herein. On: **City of University of New York, Main Admin Office** , Defendant therein named, ( hereinafter referred to as "subject").

By delivering to and leaving with **David Saums** said individual to be **Agent For Service Of Process** who specifically stated he/she was **authorized to accept** service on behalf of the Corporation/Government Agency/Entity. A description of David Saums is as follows:

**Sex**: Male    **Color of skin**: Brown    **Color of hair**: Black/Gray    **Age**: 36-50
**Height**: 5ft9in-6ft0in    **Weight**: 161-200 Lbs.    **Other** :

Sworn to before me on June 14, 2021

Patricia Rothfritz
Notary Public - State of New York
No. 01R06055503; Qualified in Nassau County
My Commission Expires February 26, 2023

Client's File No.: 2021000822

Process Server Please Sign
Raed Ibrahim
Lic# 1326602
Job #: 2113194

*DIRECT PROCESS SERVICE: SERVICE DISTRIBUTED BY INTER COUNTY JUDICIAL SERVICES LLC,*
*6851 JERICHO TURNPIKE, SUITE 180, SYOSSET NY 11791 LICENSE # 1371771*

1 of 1

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF QUEENS
-------------------------------------------------------------- X

KATHY MEDRANO,

                                    *Petitioner,*

              -against-

CITY OF NEW YORK, CITY UNIVERSITY OF NEW
YORK, LAGUARDIA COMMUNITY COLLEGE,
KENNETH ADAMS, CHANDANA
MAHADESWARASWAMY, CATHERINE BONET, and
DARREN THOMAS,

                                    *Defendants.*

-------------------------------------------------------------- X

**STIPULATION OF
EXTENSION OF TIME TO
RESPOND TO THE
COMPLAINT**

Index No. 709760/2021

            **WHEREAS,** Plaintiff KATHY MEDRANO commenced this action on or about

April 28, 2021, by filing a Summons and Complaint in which she asserts causes of action against

certain defendants, including the CITY OF NEW YORK, the CITY UNIVERSITY OF NEW

YORK, LAGUARDIA COMMUNITY COLLEGE, KENNETH ADAMS, CHANDANA

MAHADESWARASWAMY (collectively, for the purposes of this Stipulation only, "City

Defendants") under, *inter alia,* N.Y. General Business Law §§ 349 and 350; N.Y.C. Admin.

Code §§ 5-09 and 20-700; 42 U.S.C. §§ 1983 and 2000d; and the common law;

            **WHEREAS,** Plaintiff served said Summons and Complaint upon the CITY OF

NEW YORK on or about June 10, 2021, and upon the CITY UNIVERSITY OF NEW YORK,

LAGUARDIA COMMUNITY COLLEGE, KENNETH ADAMS, and CHANDANA

MAHADESWARASWAMY on or about June 11, 2021;

            **WHEREAS,** the CITY OF NEW YORK must respond to the Complaint on June

30, 2021, and the CITY UNIVERSITY OF NEW YORK, LAGUARDIA COMMUNITY

COLLEGE, KENNETH ADAMS, and CHANDANA MAHADESWARASWAMY must respond to the Complaint on July 1, 2021;

WHEREAS, counsel from the New York City Law Department was assigned to this action on June 29, 2021, and requires additional time to investigate the factual allegations contained in the Complaint and to prepare a response to said Complaint, in addition to finalizing the representation status of certain defendants;

IT IS HEREBY STIPULATED AND AGREED, by and between the undersigned, as follows:

1. The City Defendants' deadlines to respond to the Complaint in the above-captioned action are hereby extended to August 2, 2021, upon consent.

2. This Stipulation is made without prejudice to or waiver of any defenses and objections that City Defendants may subsequently interpose.

THIS AREA INTENTIONALLY LEFT BLANK

-2-

3.     This document may be executed in subparts, and, whether or not it is

executed in subparts, a signature received by facsimile or electronic mail shall have the same

force and effect as an original signature.

Dated:     June 30, 2021
           Queens, New York

**THE LAW OFFICE OF SUZANNE MYRON**

Attorney for Plaintiff
6800 Jericho Turnpike Suite 120W
Syosset, NY 11791
t: (519) 393-5821
e: smyron@specialeducationlawyerny.com

By: _____
       SUZANNE MYRON, ESQ.

**GEORGIA M. PESTANA**
*Acting Corporation Counsel*
  *of the City of New York*
Attorney for Defendants City of New York,
  City University of New York, LaGuardia
  Community College, and Kenneth Adams
100 Church Street, Room 2-106
New York, NY 10007
t: (212) 356-2649
f: (212) 356-1148
e: dthayer@law.nyc.gov

By: _____
       DAVID S. THAYER
       *Assistant Corporation Counsel*

-3-